**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**MICHAEL FIORITO,**

        Petitioner,

                                **Civil Action No.: 2:16cv36**
                                **(Judge Bailey)**

**WARDEN SAAD,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On May 6, 2016, Petitioner Michael Fiorito ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On May 23, 2016, Petitioner paid the $5 filing fee. On August 24, 2016, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 14. On October 14, 2016, Respondent filed a response by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 22. On October 17, 2016, the Court entered an Order and Roseboro Notice [ECF No. 24], informing Petitioner of his right and obligation to respond to the Government's motion. On November 17, 2016, Petitioner filed his Response. ECF No. 29. On December 19, 2016, Petitioner filed a Motion for Summary Judgment. ECF No. 33. On January 30, 2017, Petitioner was granted leave to clarify the relief that he is requesting. ECF No. 36. On April 10, 2017, Respondent filed a Response in Opposition to Petitioner's Motion clarifying relief sought. On June 2, 2017, Petitioner filed a Reply. ECF No. 47. The

matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.   BACKGROUND

On April 29, 2010, Petitioner was sentenced in the United States District Court for the District of Minnesota to a term of 270 months for one count of Conspiracy to Commit Mail Fraud and six counts of Mail Fraud. ECF No. 23-1 at10. Petitioner's projected release date is January 26, 2027, via good conduct time. Id. at 11.

On May 27, 2015, while housed at FCI Pekin[1], Petitioner received Incident Report No. 2719687 which charged him with "Use of the Mail for an Illegal Purpose." On June 25, 2015, a Disciplinary Hearing Officer ("DHO") conducted a disciplinary hearing and found the Petitioner had committed the charged offense. The DHO sanctioned Petitioner as follows: (1) 41 days disallowance of good conduct time; (2) 90 days loss of commissary privileges; and 3) a $50 monetary fine.

On August 10, 2015, Petitioner began the administrative remedy process challenging the disciplinary sanctions imposed with respect to the Incident Report cited above. On October 28, 2015, the BOP Mid-Atlantic Regional Office granted Petitioner's request and remanded the Incident Report for reinvestigation and reprocessing. ECF No. 23-1 at 15. When the incident report was remanded for reinvestigation and reprocessing, Petitioner had been transferred from FCI Pekin, where the alleged offense occurred, to FCI Gilmer. The Incident Report was never rewritten or reissued.

---

[1] FCI Pekin is located in Pekin, Illinois. See www.bop.gov.

## III  PLEADINGS

**A.     The Petition (ECF No. 1)**

Petitioner makes lengthy allegations regarding a sexual assault perpetrated on him on March 17, 2015, while he was housed in the Special Housing Unit ("SHU") at FCI Pekin.  In fact, Petitioner filed a Bivens complaint in the United States District Court for the Central District of Illinois on April 15, 2015. See 1:15-cv-01157-SLD (C.D. IL). Petitioner maintains that he was issued incident report #196[2] in retaliation for filing grievances against various staff members at FCI Pekin and for filing the civil complaint against the same individuals. Petitioner further alleges that on or about May 5, 2015, the "Captain" came to his cell and told him that if he dropped the lawsuit, he would make sure that Petitioner received medical attention, was transferred closer to home, and no incident report would be written. Petitioner alleges that based on these promises, he voluntarily dismissed his civil complaint pending in the Central District of Illinois.[3]

Petitioner further alleges that despite these promises which induced him to drop the civil complaint, the incident report was issued on May 26, 2015, and following an "interview' with the Disciplinary Hearing Officer in July of 2016[4], he was found guilty. Petitioner appealed this decision through the grievance process and asserts that the Regional Director sent the incident report back on October 24, 2015 to be "reprocessed"

---

[2] Petitioner refers to Incident #196 throughout his multiple pleading. For purposes of clarification, the Incident Report No. is 2719687 which charged him with Code Violation 196, "Use of the Mail for an illegal purpose or to commit or further a Greatest category prohibited Act."

[3] The docket sheet from the civil case reflects that the Plaintiff moved to voluntarily dismiss his case pending exhaustion of administrative remedies, but filed a motion to preserve evidence, including video from the SHU for the dates 3/17/15, 3/19/15, and 4/21/15 – 4/29/15 as well as emails, notes, memoranda and reports regarding the 3/20/15 interview of him. See TEXT ONLY ORDER dated 5/15/15 in 1:15cv-cv-01157-SLD (CD IL).

[4] The undersigned believes Petitioner means July of 2015.

and "reinvestigated." Petitioner maintains that the BOP has abandoned the incident report by its refusal to take any action after the Regional Director ordered it reinvestigated. Petitioner further maintains the incident report cannot be resurrected because it is now time barred per the Code of Regulations. Finally, Petitioner alleges that any attempts to rewrite and/or reissue the incident report at this time would be solely to retaliate against Petitioner for filing this petition, the Bivens Complaint in Illinois[5] and other grievances he has filed against BOP staff at FCI Pekin.  Petitioner requests that the Court order the expungement of the abandoned incident report from his BOP file.

In addition Petitioner alleges that Congress never granted the BOP authority to rewrite, reissue or remand an incident report. Petitioner maintains that on April 10, 2016, his case manager at FCI Gilmer was submitting him for transfer to a facility closer to his home to comply with BOP policy but had to place the transfer on hold because the #196 incident report was appearing as "unresolved" in his BOP file. Petitioner alleges that his case manager stated that the incident report should be time barred but he did not know how to delete it from the file. Upon inquiry to the unit manager, his case manager was told that the BOP had forever to reprocess an incident report once it is remanded. Petition then alleges that on Thursday, May 5, 2016, "Defendant" Kursock was served at FCI Pekin with a notice that Petitioner had filed a Bivens complaint against him. Petitioner maintains that later that day or the next day, Kursock contacted

---

[5] Although Petitioner makes no specific reference, a review of PACER establishes that Petitioner filed a <u>Bivens</u> complaint on February 18, 2016 in the Central District of Illinois again raising allegations involving a sexual assault perpetrated against him in the SHU at FCI Pekin in March of 2015. The complaint also raises claims regarding the incident report in question in this case. <u>See</u> 1:16-cv-01064-JES (CD IL).

his unit manager and advised her that he was going to rewrite the incident report.[6] Petitioner then notes that Kursock originally investigated the incident for four months before issuing the incident report in 2015. The Regional Director ordered the incident report to be reprocessed and reinvestigated in October 2015, and no action was ever taken until after Kursock was served with a civil case. Petitioner's maintains that it is blatant retaliation that Kursock deems it necessary to rewrite an obviously time barred incident report.  Moreover, Petitioner alleges that rewriting and/or reprocessing an incident report violates the laws of the United States because no such policy exists in the Code of Federal Regulations. Accordingly, as additional relief, Petitioner requests a "TRO" prohibiting the BOP from taking any further disciplinary action against Petitioner regarding the incident report issued on May 26, 2015.

**B.      Respondent's Motion to Dismiss or for Summary Judgment (ECF No. 34)**

Respondent advances the following arguments in response to the petition:

1.  Petitioner is challenging disciplinary proceedings and sanctions that have already been fully expunged from his record, and therefore this habeas petition is moot because he has received the exact relief he is seeking in this case.

2.  Petitioner's allegations of harassment and retaliation raise purported constitutional tort claims which are not cognizable in a habeas petition.

3.   Petitioner's assertion that the underlying disciplinary process and administrative review in this case violated federal regulations and BOP policy is not cognizable in a habeas petition.

4.  Petitioner's request for a temporary restraining order preluding the BOP from

---

[6] To date, Petitioner has not indicated that the Incident Report has been reissued.

issuing further discipline with respect to Incident Report 2719687 is not

cognizable in a habeas petition.

**C.    Petitioner's Opposition to Respondent's Motion (ECF No. 29)**

In response to Respondent's alternative motions, Petitioner argues that not all of

the sanctions originally imposed by the DHO have been expunged, and he remains

entitled to relief. In particular, Petitioner argues that Respondent did not refute his

claims under Ground 2, and the issue of injunctive relief remains viable. In addition

Petitioner argues that by granting some of the relief he requested, expungement and

restoration of good time credit, Respondent has conceded that his claims are justiciable

in this habeas petition under § 2241(c)(3).

**D.    Petitioner's Motion to Clarify Relief (ECF No. 28)**

On November 17, 2016, Petitioner filed a Motion to Clarify Relief which was

subsequently granted. Petitioner maintains that in order to retaliate against him for

incidents related to the incident report at issue, the BOP purposely transferred him over

1000 miles from his home in violation of BOP policy. Petitioner argues that it is

uncontested that this was a sanction imposed as the result of the invalid incident report.

Accordingly, Petitioner requests that he be immediately transferred back to one of the

three federal prisons in Minnesota in which he is qualified to be housed. Petitioner also

maintains that his security score was artificially inflated as a result of the incident report

which deprives him of the ability to transfer and participate in all the BOP's rehabilitative

programs. Accordingly, Petitioner requests that his security score be restored back to

11 points. In addition, Petitioner maintains that the BOP never had authorization from

Congress to rewrite and reissue incident reports, and the BOP has no guidelines for the

same.  Therefore, Petitioner requests that this Court issue declaratory relief pursuant

the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Finally, Petitioner maintains

that even though the incident report has been expunged, he has been informed that the

BOP could come back and rewrite the incident report years later. Therefore, Petitioner

seeks a permanent injunction barring the BOP from ever rewriting or reissuing this

incident report. Finally, Petitioner seeks immediate refund of his $50 fine.[7]

**E.    Petitioner's Motion to Supplement (ECF No. 31)**

On December 19, 2016, Petitioner file a Motion to Supplement.  The motion was

granted on January 30, 2017. In the supplement, Petitioner argues that the fine imposed

upon him as the result of the baseless incident report, and which has not been

refunded, is enough to defeat Respondent's request for summary judgment and her

claim that this action is moot.

**F.    Petitioner's Motion for Summary Judgment (ECF No. 33)**

On December 19, 2016, Petitioner filed a Motion for Summary Judgment. In

support of his motion, Petitioner alleges that Respondent never contested Ground II[8] of

his petition, and thus conceded the issue.

**G.    Respondent's Response in Opposition to Motion to Clarify Relief (ECF No. 42)**

Respondent argues that the relief requested by Petitioner in his Motion to Clarify

Relief, i.e., (1) an immediate transfer back to a BOP facility in Minnesota; (2) restoring

---

[7] Since Petitioner's Motion to clarify relief was filed, the BOP has refunded Petitioner his $50 fine. ECF No. 49.

[8] Again, Ground II of the petition alleges that Congress never granted the BOP authority to rewrite or remand an incident report. However, as is noted several times within this Report and Recommendation, the Incident report in question has been expunged, and has never been rewritten.

his security score back to 11 pints; (3) immediate refund of a $50 disciplinary fine; (4)

declaratory relief; and (5) a permanent injunction barring the BOP from ever rewriting or

reissuing the incident report, does not challenge the fact or duration of his confinement.

More specifically, Respondent argues that even if this Court granted all of Petitioner's

requested relief, he would not necessarily be released from prison any sooner.

Moreover, Respondent argues that Petitioner's requested relief do not state viable

habeas claims.

**H.     Petitioner's Motion for Leave to File Motion and Judicial Notice of Fourth**
**Circuit Opinion (ECF No. 48)**

On June 5, 2017, Petition filed a motion requesting that the Court take judicial

notice of the Fourth Circuit opinion issued in <u>Fontanez v. O'Brien</u>, 807 F.3d 84 (4th Cir.

2015), which Petitioner asserts defeats Respondent's argument that a §2241 petition

can only be used by prisoners if it affects the duration or length of their sentence.

Petitioner's motion has been granted, but because the decision in <u>Fontanez</u> does not

provide support for Petitioner, the undersigned has not required a supplemental

response.

## IV. <u>STANDARD OF REVIEW</u>

**1.     Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th

Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim,

a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Ashcroft</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id.</u>

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp.</u>, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id.</u> "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any

permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. DISCUSSION

The undersigned begins his discussion with a summary of the facts which are not in dispute. First, there is no dispute that Petitioner was issued Incident Report # 2719687 on May 27, 2015, while he was incarcerated at FCI Pekin, charging him with Code Violation 196, Use of the Mail for an Illegal Purpose. There is also no dispute, that Petitioner appeared before a DHO on June 25, 2015, and subsequently was found guilty of committing the charged offense and sanctioned with loss of good conduct time, loss of phone and commissary privileges and a $50 fine.  Furthermore there is no dispute that Petitioner appealed the DHO finding through the administrative grievance process, which resulted in a decision by the BOP Mid-Atlantic Regional Office on October 28, 2015, which remanded the Incident Report for reinvestigation and reprocessing. Moreover, it undisputed that the Incident Report has been expunged from Petitioner's Inmate Discipline Data[9] and his good conduct time has been restored and the $50 fine reimbursed on April 15, 2017. ECF No. 49.

---

[9] Petitioner apparently has at least three prior federal convictions.  The first is from the Northern District of Illinois, about which the undersigned can give no details because of the age of the case. See 1:89-cr-00515-1 (N.D. IL). On March 6, 1995, Petitioner was sentenced in the Northern District of Illinois to a term of 25 months for Counterfeiting in violation of 18 U.S.C. § 513(a), with said sentence to run concurrent with the sentence imposed in case number 89cr515. See 1:94-cr-00153-1 (ND IL). On June 15, 1998, Petitioner was sentenced in the United States District Court for the District of Minnesota to 46 months for Mail Fraud in violation of 18 U.S.C. § 1341 and a concurrent 46 months sentence for Wire Fraud in violation of 18 U.S.C. § 1843. See 0:97-cr-00358-ADM-JGL-1 (DMN). Petitioner's Inmate Discipline Data contains 18 Incident Reports dating back to January 28, 1991. However, there are no incident reports after July 23, 2003. ECF No. 23-1 at pp. 19-23.

Therefore the dispute in this case centers on Petitioner's allegations that he was transferred over 1000 miles from his home as a result of the now expunged Incident Report; that his security score was artificially inflated as a result of the Incident Report; that he faces the possibility that the Incident Report could be reissued at any time; and that the BOP never had authorization to rewrite or reissue incident reports. Therefore, the relief Petitioner continues to request is a transfer to a BOP facility in Minnesota; restoration of his security score to an 11; a declaratory judgment that the BOP lacks the authority to reissue incident reports; and a permanent injunction barring the BOP from rewriting or reissuing the Incident Report.

Section 2241 provides a remedy where a prisoner "is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241(c)(3). In particular, a § 2241 petition is intended to address the **execution** of a sentence. Examples of an appropriate use of § 2241 petition include "actions challenging the computation of parole, computations of good time or jail credits, prison disciplinary actions, or imprisonment allegedly beyond the expirations of a sentence." Anderson v. Pettiford, 2007 WL 15777676 (D.S.C. May 31, 2007) (internal citations omitted). "[T]he Supreme Court [has] held that the writ of habeas corpus was the exclusive remedy for prisoners seeking release from custody." Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir. 2005). Also worth noting is that at the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release from active confinement." Preiser v. Rodriquez, 411 U.S. 475, 498 (1973).

As has been previously noted, the Incident Report has been expunged and Petitioner's good conduct time has been restored.  Therefore, the Incident Report no

12

longer has any impact on the date Petitioner will be released from custody. Furthermore, to the extent that any argument could be made that reimbursement of the $50 fine was appropriate relief in this matter, the money has been reimbursed, and the direct ramifications associated with the Incident Report are now moot.

To the extent Petitioner alleges that his custody classification has been inflated as a result of the expunged incident report, this Court has consistently ruled that an inmate's challenge to his security score is not a proper basis for the award of habeas relief. See Cunningham v. O'Brien, No. 5:14ccv114, 2015 WL 1915338 (N.D.W.Va. April 27, 2015) (noting that an inmate's challenge to his classification score was not cognizable in a habeas action because he was not "seeking an immediate or speedier relief from custody, but instead [was] challenging the condition of his confinement.") See also Pickney v. DOJ, et al., No. 1:07-cv-106, 2009 WL 277551 (N.D.W.Va. Feb. 5, 2009) (noting that a habeas petition was not the appropriate avenue to challenge a security classification score because such a claim is not related to the execution of the sentence – even if an inmate's custody classification level is recalculated, the fact or duration of his confinement would remain the same). These decisions are consistent with the decision of the Supreme Court in Wilkerson v. Dotson, 544 U.S. 74 (2005). In Wilkinson, the Supreme Court reviewed which prisoner claims properly may be brought in a habeas petition as opposed to a civil rights complaint, and made clear that habeas petitions are only appropriate where "success in [the] action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 82. Accordingly, Petitioner's challenge to his custody classification is not appropriate for the Court's consideration in this petition.

Likewise, to the extent that Petitioner argues that he was transferred to a BOP facility 1000 miles from his home in retaliation for his filing grievances and a civil rights complaint and requests that he be moved immediately to a BOP facility in Minnesota, Petitioner again fails to request appropriate relief in a habeas petition. 18 U.S.C. § 3621(b) provides that "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate…" Furthermore, the transfer of a convicted and sentenced inmate is within the sound discretion of the Bureau of Prisons. Meachum v. Fano, 427 U.S. 215 (1976).  Accordingly, an inmate has no constitutional right to be housed in one particular location over another, regardless of his security classification. Id.

"Where a prisoner "seeks a 'quantum change' in his level of custody, such as freedom, his remedy is habeas corpus. However, when as here, a prisoner seeks a different program, location, or environment, his challenge is to the condition of his confinement rather than the fact of his confinement, and his remedy is under civil rights law." Campbell v. Deboo, No. 1-11-cv-3, 2011 WL 1694454, at 2 (N.D.W. Va. May 4, 2011) (citations omitted), aff'd 451 F. App'x 288 (per curiam) (unpublished). Therefore, because Petitioner seeks immediate transfer back to a BOP facility in Minnesota, his request falls within the exclusive discretion of the BOP and is clearly not cognizable in a habeas petition.

Petitioner also seeks a permanent injunction prohibiting the BOP from reissuing Incident Report # 2719687 which he received on May 27, 2015, and was expunged on May 20, 2016. Petitioner has cited no authority for issuance of a permanent injunction as relief in a §2241 petition, and the undersigned has found no basis for issuing the same.  Moreover, in the context of civil rights cases, the Plaintiff's transfer or release from a particular prison moots his claim for injunctive relief. See Incuma v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007); see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991 (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (same).  Here, Petitioner has been transferred not once, but twice since his petition was filed with this Court, and he is currently incarcerated at Victorville Medium II in Adelanto, California. Moreover, it appears clear that if the Incident Report  were reissued, it would have to reissued at FCI Pekin, over which this Court has no jurisdiction. Finally, it does not appear that issuance of Incident Report 2719687 is capable of repetition yet evading review. Accordingly, the undersigned finds that to the extent that injunctive relief might be appropriate in a § 2241 petition, the request is moot in this particular instance.

The undersigned now turns to Petitioner's request for declaratory judgment. Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Moreover, the procedure for obtaining such relief is governed by the Federal Rules of Civil Procedure. See Fed.R.Civ.P. 57. However, a request for declaratory relief is an "equitable cause of action." See Great

Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300 (143); see also International Brotherhood of Teamsters v. Eastern Conference of Teamsters, 160 F.R.D. 452, 455-56 (S.D.N.Y. Mar. 15, 1995) (Rule 57 of the Federal Rules of Civil Procedure "contemplates that an action for declaratory judgment is a civil action…"). In other words, "a party many not make a *motion* for declaratory relief, but rather, a party must bring an *action* for declaratory judgment." International Brotherhood of Teamsters, 160 F.R.D. at 456 (emphasis in original).

Here, Petitioner initiated this case as habeas action and requested declaratory relief pursuant to the Federal Declaratory Judgment Act.  ECF No. 28 at 5. Thus, Petitioner's request is defective in that it is inconsistent with the Federal Rules of Civil Procedure. Id. For this reason, Petitioner's request for declaratory relief pursuant to 28 U.S.C. § 2201 is not appropriately pursued in his pending §2241. Instead, Petitioner would be required to file a complaint or petition for declaratory judgment and pay the requisite $400 filing fee.[10]

Finally, the Court turns to Petitioner's argument that the Fourth Circuit decision in Fontanez v. O'Brien, 807 F.3d 84 (2015), permits a petitioner to use a § 2241 petition to challenge an injury other than the fact or duration of his sentence.  However, the Fontanez decision deals with the Inmate Financial Responsibility Program ("IFRP"), and the Court made it clear that a § 2241 was proper vehicle to challenge his restitution payments only because it was part of his sentence, and accordingly, the IFRP pertains to the execution of a sentence. Therefore, Fontanez does not support Petitioner's

---

[10] In making this observation, the undersigned should not be construed as implying that Petitioner would be entitled to a declaratory judgment. Additionally, the undersigned recognizes that Petition, should he chose to file action for declaratory judgment, could file a motion to proceed without prepayment of costs.  However, if that motion were granted, he would still be required to pay the filing fee from his prisoner trust account report in increments.

contention that an injury, such as increased custody classification or transfer from one BOP facility to another, raises a claim that is properly raised in a § 2241 petition.

## VI. <u>RECOMMENDATION</u>

For the foregoing reasons, it is hereby recommended  that Respondent's First Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 22] be **GRANTED**, the Petitioner's Motion for Summary Judgment [ECF No. 33] be **DENIED** and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: July 10, 2017.


/s Michael John Aloi
MICHAEL JOHN ALOI
UNITED STATES DISTRICT JUDGE